## WALTER R. WILMOT v. MINNEAPOLIS AUTOMOBILE TRADE ASSOCIATION.[1]

November 12, 1926.

No. 25,648.

**Resort to extrinsic circumstances proper when ambiguity appears upon application of terms of contract to its subject matter.**

A written contract under which plaintiff managed automobile shows for defendant provided that the former was to have, in addition to salary, ten per centum of "net profits or net receipts." Resort was properly had to extrinsic circumstances showing that the parties themselves had adopted the permissible method of computing net profits explained in the opinion, the ambiguity appearing not from the face of the contract but upon application thereof to its subject matter.

Contracts, 13 C. J. p. 521 n. 18; p. 1175 n. 43; p. 1177 n. 46; p. 1182 n. 73.

Invoice, 33 C. J. p. 811 n. 96.

[1]Reported in 210 N. W. 861.

Plaintiff appealed from an order denying his motion for a new trial after judgment in favor of defendant, Nordbye, J., in an action in the district court for Hennepin county.   Affirmed.

*F. D. Larrabee*, for appellant.

*G. A. Will*, for respondent.

Stone, J.

Action on written contract for an alleged balance.   After trial without a jury plaintiff appeals from the order denying his motion for a new trial.

For several years prior to 1923 plaintiff had been the manager of annual automobile shows sponsored by defendant.   There was no written contract.   Under date of April 5th plaintiff submitted to defendant a written proposition which, accepted, is the contract decisive here.   It covered the two-year period ending April 30, 1924. It entitled plaintiff to a salary of $5,000 and in addition 10 per centum "of the net profits or net receipts" of the shows of 1923 and 1924. The commission was payable "immediately upon a complete audit of the receipts from each show."

Pursuant to that contract, receipts and disbursements of the shows were audited by certified public accountants.   They arrived at plaintiff's commission by a method which can be illustrated better by hypothetical than by the actual figures before us.   If we suppose that after deducting from the gross receipts of a show all of the disbursements, except only plaintiff's commission, there was left $110,000, we have a case which will illustrate the present one simply and clearly.   With that amount left it might seem that the obvious thing was to give plaintiff 10 per centum thereof or $11,000. The auditors for defendant did not take that view.   They would not treat, in the supposed case, the $110,000 as the net profits or net receipts, but rather as 110 per centum thereof.   That would make the net as computed by the auditors $100,000 and entitle plaintiff to $10,000 instead of $11,000, the difference to him being 10 per centum of the smaller amount.   The difference for the two years in question, over $600, is the sum now in issue.

Without attaching any fixed meaning to the phrase "net profits or net receipts" the learned trial judge found, resorting to parol evidence, that the words were used with respect to the method of audit which had been in vogue several years and from the time plaintiff first assumed the management of defendant's shows. The method we have illustrated was the one adopted by the parties without question, so it was found below, from the beginning.

Plaintiff claims nothing for any show previous to that of 1923. The receipts and disbursements for that were audited in due course and plaintiff accepted his commission, computed as already indicated. It is said that he did not object until his contract, after the 1924 show, was not renewed. It was held below that the parties "had agreed upon and had adopted" the method stated above, the same being the one "used by the public accountants that were engaged by the defendant to audit" its books relating "to the receipts and disbursements of said automobile shows."

The duty of courts is to apply contracts to their subject matter and so effect the purpose of the parties. Their interpretation is incidental. To accomplish the main object resort may and frequently must be had to the circumstances under which the contract was made and, if there be need for resort to extraneous aids to construction, it is immaterial whether such need arises from an uncertainty in the instrument itself or, that being clear standing alone, it ceases to be so and ambiguity arises when the contract is applied to its subject matter. In either case construction must follow and resort must be had to the aids furnished by extrinsic circumstances. The prohibition of the law is not against their being used for interpretation but against making them the instruments of contradiction of an expressed contractual intent. The old distinction between patent and latent ambiguities, never more than "an unprofitable subtlety" (Thayer, Preliminary Treatise on Evidence, 424), "so far as contracts are concerned   *   *   *   may be wholly disregarded." 2 Williston, Contracts, § 627.

In this contract, the intention is expressed that the transactions of each show were to be audited, plaintiff's commission as to amount

depending on the result. True, the auditors were not umpires in the sense that their determination was binding, but the audit nevertheless was contemplated and it is to the result of that audit that the written contract must be applied. It is upon that application that the difficulty arises. The query is, was it proper to admit testimony that the audit was made in the same manner that it had been for years and that during all the time plaintiff had acquiesced in it? A negative answer is impossible because it would thwart the one purpose of construction which is to ascertain the intention of the parties themselves. It would sacrifice rationalism to that "primitive formalism which views the document as a self-contained and self-operative formula" rather than an instrument the whole of which is in relation to extrinsic matter, and concerning which very frequently there can be no adequate understanding of purpose without first an understanding of the extrinsic facts and things upon which the writing must have its only operation. 4 Wigmore, Ev. (1st ed.) p. 3499.

While it is true that the terms of a contract are to be given their ordinary effect, yet if in applying a written contract to its subject matter it appears that words susceptible of more than one meaning were used in a particular sense, that meaning controls. The net profits from plaintiff's standpoint were those remaining after deducting all expenditures other than his own commission. To the defendant however and its shareholders the net could not be reached until after the deduction of plaintiff's commission also. That idea lends support to the argument of the accountants that their method was the correct one for determining the actual net return by way of net profits or net receipts of the owner. We do not so hold but we are of the opinion that, upon applying this contract to its subject matter, it becomes uncertain, without resort to the custom of the parties and their course of dealing, which of two permissible bases for computing "net profits or net receipts" was intended. The problem was solved below in the manner already indicated and we think correctly.

In a sale of a stock of merchandise "invoice price" means wholesale cost. Knopfler v. Flynn, 135 Minn. 333, 160 N. W. 860, Ann. Cas. 1918E, 538. But if it appears from extraneous circumstances that the parties meant payment to be on the basis of retail rather than wholesale prices, their intention, although ascertained outside the contract, will govern. Sell v. Lenz, 149 Minn. 200, 183 N. W. 135. That is a parallel case, the inventory at retail prices, acquiesced in by the parties, taking the determinative place occupied by the method of audit, also acquiesced in by the parties in this case.

We decide the case without weighing separately the argument of practical construction for defendant and without attempting any independent definition of "net profits or net receipts." That task has been frequently attempted by judges and the results show that it has not always been an easy one. 5 Words & Phrases 4781; 3 Id. (2d. Ser.) 592. What is net return frequently depends, as in the instant case, on the viewpoint.

Order affirmed.