[1] Reported in 291 N.W. 289.
By his special guardian, Scofield Fiske, an infant of 11 years, appeals from the judgment of the district court affirming an order of the probate court which refused to vacate its final decree distributing the estate and several preliminary orders which were in effect thereby confirmed. The preliminary orders questioned by appellant allow several annual and the final accounts of respondent as executor. They stand or fall with the final decree. Orders and decree are attacked on the ground of fraud, 2 Mason Minn. St. 1927, § 9405, and "mistake, inadvertence, surprise, or excusable neglect," Id. § 9283. Mr. Sigurd Ueland was appointed, on September 25, 1935, as special guardian of appellant for the purposes of this proceeding.
Douglas A. Fiske died testate in January, 1928. His widow, Helen C. Fiske, elected not to take under the will. Her one-third eliminated by that election, the residue went into a testamentary trust mainly for the benefit of Torrance Fiske, Douglas A. Fiske, Jr., and Lois Fiske Peters, sons and daughter of the deceased. Respondent, First Minneapolis Trust Company (now, by consolidation and merger, become First National Bank Trust Company of Minneapolis) was trustee. It and Torrance Fiske, son of the testator, were executors of the will. They acted jointly until the death of Torrance in March, 1929, when respondent became sole executor. Shortly after the death of Torrance, Pierce Butler, Jr., of the St. Paul bar, a long-time personal and family friend, became executor of his estate. Appellant, Scofield Fiske, is the infant and only child of Torrance Fiske, deceased. As grandson *Page 46 
of Douglas A. Fiske, he succeeded to the substantial interest of his father under the involved will and the testamentary trust thereby created.
Two items of the Douglas A. Fiske estate consisted of substantial blocks of stock in Minneapolis Steel Machinery Company and the First National Bank of Minneapolis. The Steel Machinery Company stock was by respondent, as executor, exchanged for that of Minneapolis-Moline Power Implement Company at the rate of one share of the old for two of the new. Respondent, as executor, also exchanged the First National Bank stock for shares of the First Bank Stock Corporation when the latter was organized as a holding company. Four shares of the new company were received in exchange for each of the shares in the First National Bank.
All this seemed advisable in 1929, when, so far as the record discloses, everyone concerned considered the exchange not only "good business," but a real opportunity for enhanced gain.
Respondent, as affiliate of the First National Bank, had, it is clear, a selfish interest incompatible with that of the Fiske estate in both transactions. The bank was one of the underwriters of the Minneapolis Steel Machinery Company merger. Its management was a moving power back of the banking enterprise for which the First Bank Stock Corporation was the holding company.
The estate became the subject of much and protracted litigation in the probate court. Quite aside from appellant, there were at least two contending groups. Finally, early in 1931, they got together in a comprehensive settlement, integrated first by stipulation and then in the probate decree now under attack.
All along, respondent's relation to both challenged transactions was disclosed both to court and litigants. There is a finding (to which we give no weight) that its personal interest therein was relatively small and without influence upon its action as executor. There was no secret about either the nature or purpose of the stock exchanges or the interest of respondent's affiliate therein. *Page 47 
When Mr. Butler became executor of the Torrance Fiske estate, and in May, 1929, he procured the appointment of Mrs. Torrance (Harriet S.) Fiske as guardian of the person of appellant. At the same time, again on the initiative of Mr. Butler, respondent became guardian of his estate. From then on, until the decree of distribution, it was acting as both guardian of appellant's estate and as executor of the will. After entry of the decree, it took over as trustee of the testamentary trust.
Being a minor of tender years, appellant has never had and has not now any personal knowledge of what has been done concerning his estate. But the litigation was such that the questioned transactions were examined at the time by interests opposed to those of respondent. Appellant's aunt, Mrs. Peters, was represented by Mr. Norton Cross, of the Hennepin county bar. Mrs. Helen C. Fiske, widow of the deceased, for herself and her minor son, Douglas A. Fiske, Jr., retained Mr. H.V. Mercer. Both these gentlemen served their clients faithfully and well. There was one hearing in which Mr. Mercer participated which the probate court managed to finish in six days.
From the death of Torrance Fiske, Mr. Butler, with the assistance of Mr. William Mitchell, his partner, served the interests not only of the estate of Torrance Fiske as such, but also those of his widow and of appellant, his son. Either Mr. Butler or Mr. Mitchell appeared at all hearings which in any way involved the interests of Mrs. Torrance Fiske or appellant. Mr. Butler frankly says not only that he knew all about the stock exchanges at the time, but that he considered them "good business." Neither he nor his firm represented respondent in any capacity other than as guardian of appellant. As its attorneys, they joined in the stipulation of settlement, which was confirmed by final decree. They procured an order of the probate court authorizing their client, respondent, as guardian of appellant's estate, to join in the stipulation of settlement.
1. Outstanding, then, is the fact that, whatever the selfish interest of respondent in the challenged transactions, its attorneys, *Page 48 
retained in the guardianship of appellant, were men of competence, independent judgment, and without division of allegiance.
It is too plain for even suggestion of doubt that Messrs. Butler and Mitchell, from the death of Torrance Fiske on, acted as attorneys for both appellant and his mother. As Mr. Butler put it, they "had been acting for these people throughout this whole transaction and discussion." In the testimonial words of Mr. Mitchell, "we were representing the family of Torrance Fiske," that is, appellant and his mother. Both attorneys "knew of the situation with regard to" the stock exchanges and the relationship between respondent on the one hand and the First National Bank and the First Bank Stock Corporation on the other. To both transactions they gave extensive consideration to determine their effect and that of the probate court order of confirmation "on the interests" of mother and son in order that "we might determine what action if any we desired to take in regard to the order." The result was that the "settlement as finally worked out was acceptable * * * from the point of view of Harriet Fiske and her minor son," appellant.
Respondent was in the improper position of a trustee whose own interests were much interwoven with those of its affiliate, the bank. There was also incompatibility between its positions and duties as executor and guardian. But, either by its own well advised procedure or by gift of kind circumstance, its action as guardian was controlled by competent counsel whose sole duty and allegiance were to the ward. That fact, incontrovertibly established by record and findings, sustains the decision below.
The argument for appellant is sound that the ultimate question whether respondent's account should be surcharged was not before the court. But there was presented the closely related problem as to whether appellant had made such primafacie showing for surcharge that the settlement, final decree, and the earlier orders allowing respondent's accounts as executor should be opened for relitigation of the merits. *Page 49 
We assume that respondent's selfish interest in the stock exchanges was such, and that it had so much division of allegiance as between its own interests and those both of the estate and appellant as a beneficiary, that, without more, the stock transactions would be voidable. 2 Mason Minn. St. 1927, § 8847; In re Estate of Sprain, 199 Minn. 511, 272 N.W. 779,111 A.L.R. 1357.
But here the transactions have been affirmed, in the unexceptionable manner stated, by the guardian, under instruction and with the authority of the court. In such case the guardian needs the court's approval. When obtained, as here, after full disclosure and with the aid of independent counsel under the single duty of caring for the ward's interests, it is not lightly to be set aside. The real ground of appellant's position is constructive fraud. But such considered judicial action as that now attacked is assailable only by "strong, clear, and satisfactory" proof. Kittson v. St. Paul Trust Co. 78 Minn. 325, 331, 81 N.W. 7, 9; Fleischmann v. N.W. Nat. B. T. Co. 194 Minn. 234, 260 N.W. 313. The only defect in appellant's case is lack of proof, satisfactory or otherwise.
Self- or double-dealing by a fiduciary is bad. When, with full disclosure, it has proper judicial approval, it may become good because purged of vice. 2 Scott, Trusts, § 170.7; 3 Bogert, Trusts Trustees, § 484. There is authority for the statement that "the trustee can properly purchase trust property for himself with the approval of the court." Restatement, Trusts, § 170, comment f.
In order that a minor may be bound by such judicial action as that now under attack, it is not necessary that he be personally represented. Balch v. Hooper, 32 Minn. 158,20 N.W. 124; Ladd v. Weiskopf, 62 Minn. 29, 64 N.W. 99,69 L.R.A. 785. Here appellant was represented not only by his mother as guardian of his person, but also by respondent as guardian of his estate. Both had the benefit of independent and competent counsel, with no incompatibility of interest or division of allegiance. Their whole duty was to, and their whole interest that of, appellant and his mother, on whose behalf they participated in the settlement and its confirmation by final decree. *Page 50 
Courts must deal with the estates of minors. Their judgments in that field must have the effect of finality or they would cease to be judgments. Giving what force one will to the position of respondent as one of incompatibility of interest and division of allegiance in this matter, it yet remains that every conceivable precaution was taken to insure the utmost protection for the interests of appellant. We do not even find the semblance of a reason for having the matter relitigated. We cannot allow disappointment to take the place of fraud or mistake as ground for nullification of judicial action.
2. Error is assigned on the admission of the testimony of Messrs. Cross, Mercer, Butler, and Mitchell. We find no merit in the supporting argument that it either "contradicted" or "amplified" the record of the probate court. It had no effect on the record as such. It did show the subject matter, the procedure concerning and the judicial disposition of which are disclosed by the record. Such memorials as the latter speak in large part of matters extraneous to what is recorded. The process of interpretation must then include the application of writings to extrinsic things. Wilmot v. Minneapolis A. T. Assn.169 Minn. 140, 210 N.W. 861. That is all that the court did here. It simply went into matters extraneous to the record in order to apply that formal and cryptic history to its subject matter.
The evidence in the many probate court hearings was not recorded. There could be no objection to resurrecting it in this proceeding so long as it was not left to conjecture that "a fact not disclosed by the record was determined." Irish American Bank v. Ludlum, 56 Minn. 317, 320, 57 N.W. 927. The evidence in question did not transgress that limitation. So far as it disclosed the consideration of the whole matter by counsel, it did not even touch any court record.
The judgment is affirmed. *Page 51 
 UPON PETITION FOR REARGUMENT.
On April 5, 1940, the following opinion was filed: