## WALTER J. WALLACE, JR. v. JOSEPH DIXON CRUCIBLE COMPANY.[1]

January 4, 1947.

No. 34,266.

[1]Reported in 25 N. W. (2d) 465.

Best, Flanagan, Rogers, Lewis & Simonet, for appellant.
Donald O. Wright, for respondent.

MATSON, JUSTICE.

Appeal in an action on a sales employment contract from a judgment entered upon a stipulated statement of facts.

For several years prior to July 1, 1941, plaintiff had been employed by defendant. On June 17, 1941, defendant sent plaintiff a letter reading in part as follows:

"Dear Sir:

"Effective as of July 1, 1941, * * * *your annual compensation, in addition to your base salary of $200. per month* will be determined as follows:

"'A'  Net sales up to $50,000. per annum, no extra compensation.

"'B'  Net sales between $50,000. and $60,000. per annum—5% on $10,000. or any part thereof.

"'C'  Net sales between $60,000. and $75,000. per annum—6% on $15,000. or any part thereof, in addition to 'B'.

"'D'  Net sales between $75,000. and $100,000. per annum—7% on $25,000. or any part thereof, in addition to 'B' and 'C'.

"'E'  Net sales above $100,000. per annum—8% on all net sales in excess of $100,000. in addition to 'B', 'C' and 'D'.

"Your maximum *compensation, on any amount of net sales* in any one calendar year, *calculated as above set forth,* is limited to $8,000. until further notice. (Italics supplied.).

\* \* \* \* \*

"Yours very truly,"

164

On June 20, 1941, in answer to the above letter, plaintiff wrote that he would suffer a considerable loss in sales commissions which he expected to earn under his prior employment contract unless the new contract were made retroactive to January 1, 1941. By letter dated June 25, 1941, defendant offered to pay plaintiff the sum of $750 in settlement of any possible loss in commissions resulting from a termination of the old employment agreement by reason of the new contract going into effect on July 1. Plaintiff accepted this offer, and the new contract went into effect as originally provided. On January 1, 1942, an accounting and settlement was made between the parties for the six-months' period from July 1, 1941, to January 1, 1942, and in so doing the parties made their computation by adopting a sales quota for such six-months' period equivalent to one-half of the annual sales quota. For the period from January 1, 1942, to January 1, 1943, the earnings of plaintiff were calculated on an annual basis. Plaintiff continued in his employment from January 1, 1943, until May 1, 1943 (a period of four months, or one-third of a year), when his employment was terminated by his induction into the military service.

In settling with plaintiff for the final four-months' period, during which time plaintiff's sales amounted to $51,556.85, defendant paid plaintiff in addition to the $800 already received by him as an accrued base salary of $200 per month, the sum of $1,600 as base salary for the remaining eight months of the year, plus $77.84 in payment of a five percent commission for sales in excess of $50,000. This settlement was unacceptable to plaintiff, who then brought this action. The trial court, in calculating the compensation due plaintiff upon the sales made (over and above the base salary of $200 per month), adopted one-third of the $50,000 minimum annual sales quota, namely, the sum of $16,666 as the minimum sales quota to be apportioned to the four-months' period. A like adjustment was made with respect to the higher sales quota levels. By thus construing the contract as permitting the annual sales quotas to be apportioned to a unit period of less than a year, plaintiff was awarded, in addition to the accrued base salary of $800, the sum of $2,507.87 as sales com-

missions or percentage compensation, or a sum total salary and sales compensation of $3,307.87. By deducting from this amount the sum of $2,477.84 already paid by defendant, plaintiff was awarded a net balance of $830.03 as still due and owing. Defendant alleges that the trial court erred in apportioning the sales quota to a fractional period of a year and in awarding plaintiff a sum total for base salary and sales compensation in excess of one-third of the $8,000 yearly "compensation" limit fixed by the contract.

■ It is conceded that plaintiff's termination of the employment contract arose out of a cause beyond the control of either party.

"Where a servant abandons the contract for cause, as for sickness, he is entitled to his pro rata wages, or the value of his services, not exceeding the compensation fixed by the contract." 4 Dunnell, Dig. § 5810.

■ When the language of the parties in a written contract is plain and free from ambiguity with respect to its operative application to the subject matter, there is no room for practical construction. Where, however, the contract is ambiguous and uncertain in its meaning and operative effect, the practical interpretation given to the ambiguous terms by the acts and conduct of the parties themselves will be adopted, unless such practical interpretation be inconsistent with a fair and reasonable interpretation of the language itself.[2] In the instant case, the contract makes no direct provision for determining plaintiff's percentage compensation on a sales volume for a fractional part of a year. The reasonable implication of the language, taking the contract as a whole, admits of a dual interpretation. The commission percentage is specified on a certain sales volume "per annum." The words "per annum" may have been used only to indicate a restricted computation period, so that in no event could the sales volume be calculated for compensation purposes for

[2]Wilmot v. Minneapolis Auto. Trade Assn. 169 Minn. 140, 210 N. W. 861; Mienes v. Lucker Sales Co. 188 Minn. 162, 246 N. W. 667; Leslie v. Minneapolis Teachers R. F. Assn. 218 Minn. 369, 16 N. W. (2d) 313; 2 Dunnell, Dig. & Supp. § 1820, and cases cited; 12 Am. Jur., Contracts, §§ 249 and 250; Restatement, Contracts, Minn. Anno. §§ 231, 235(e).

a longer period than one year or, on the other hand, to indicate that the compensation percentage on sales volume quotas should not, as an incentive to continuous service, be apportioned to a period shorter than a year. The first interpretation would admit of a disability and apportionment of annual sales quotas to fractional parts of a year, and the latter would not. The added fact that no provision whatever was made for the termination of the contract lends emphasis to the belief that little, if any, thought was given to the possibility that a settlement for a part of a year might become necessary. Faced with this ambiguity and uncertainty, it was proper for the trial court to turn to a consideration of such practical construction as the parties themselves had adopted. Six months after the contract had been executed, the parties, by making an accounting and settlement for the first half-year period, placed their own practical interpretation on the language to the effect that the annual sales quotas were divisible and apportionable to periods of less than a year. There is nothing in the letters of June 20 and June 25, 1941, to indicate that this settlement was wholly or in part made necessary by the compromise and adjustment of disputed matters pertaining to the old employment agreement. We think the trial court acted correctly in adopting and applying the practical construction of the parties themselves.

It should be noted that in Larsson v. Augustana Colonization Assn. 155 Minn. 1, 192 N. W. 108, cited by defendant, there was no practical construction of the parties to which the court could turn in interpreting the ambiguous language of the contract. The contract involved therein expressly provided for a termination by either party upon 90 days' notice, and thus it was clear that the parties contemplated the possibility that it would be necessary to make a settlement for a period of less than a year.

■ We come to the final issue, as to whether the amount allowed plaintiff exceeds the "maximum compensation" limit of $8,000 per year. What is the meaning of the word "compensation" as used by the parties? Is it used in a broad sense as to include all earnings of plaintiff, or in a restrictive sense as to include only the percentage

commissions to be earned on sales volume? The contract was drawn by defendant.

"Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law." Restatement, Contracts, § 236(d).[3]

The very first paragraph of the contract as drawn by defendant uses the word "compensation" in a restrictive sense in providing that "your annual compensation, *in addition to your base salary of $200. per month* will be determined as follows." Immediately following the opening paragraph we have the sales-volume commission schedule. In other words, from the beginning, "compensation" is segregated and treated as something distinct from the base salary. The paragraph fixing the "maximum compensation" by a reasonable construction restricts the term to include only sales commissions by its use of the words "calculated as above set forth." Taking the contract as a whole, the words "maximum compensation" are used in a restrictive sense so as to apply only to plaintiff's earnings in the form of his percentages or commissions on the sales volume. The "maximum compensation" of $8,000 per year does not include the base salary of $200 per month, and we therefore find no error in the total allowance made to plaintiff by the trial court.

The judgment of the lower court is affirmed.

Affirmed.

---

[3]See, Geib v. Haynes Corporation, 185 Minn. 295, 240 N. W. 907; 2 Dunnell, Dig. & Supp. §§ 1832, 2686, and cases cited; 3 *Id.* § 4659; 3 Williston, Contracts (Rev. ed.) § 621; 12 Am. Jur., Contracts, § 252.