BORG-WARNER ACCEPTANCE CORPORATION v.
FIRST NATIONAL BANK OF
PIPESTONE AND ANOTHER.

238 N. W. 2d 612.

January 16, 1976—No. 45455.

*David K. Hackley* and *James E. O'Neill,* for appellant.
*David J. Trygstad* and *Gale E. Fisher,* for respondent bank.
*William P. Scott,* for respondent Claussen.

Heard before Sheran, C. J., and Todd, MacLaughlin, Yetka, and Scott, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Borg-Warner Acceptance Corporation (Borg-Warner) appeals from a judgment granting The First National Bank of Pipestone (Bank) priority in certain assets of their mutual debtor. Borg-Warner was the first to file a financing statement covering, among other goods, the same inventory included in a financing statement subsequently filed by the Bank. The lower court considered the subsequent conduct of the parties in determining priority. We reverse.

In the fall of 1970, defendant Alton G. Claussen (Claussen) purchased a hardware store at Pipestone, Minnesota. Borg-Warner and the Bank independently provided the financing of the purchase. Borg-Warner was financing the acquisition of various appliances for resale by Claussen. Trust receipts were used to identify the appliances being financed, and regular inspections were made by Borg-Warner of Claussen's appliance inventory to determine the status of merchandise scheduled on the trust receipts. To secure this transaction, Borg-Warner and Claussen entered into a security agreement entitled "FINANCE AGREE-MENT AND POWER OF ATTORNEY", which provided in part:

"To: B-W ACCEPTANCE CORPORATION

"In order to induce you to finance the acquisition by the undersigned (hereinafter called 'Debtor') of goods for inventory from a seller of such goods (hereinafter called Distributor), and to grant you a security interest in all inventory and proceeds of Debtor to secure such financing as well as all other debts or liabilities of Debtor to you, whether now existing or hereafter arising, and for other valuable consideration received, Debtor covenants and agrees as follows:

\*   \*   \*   \*   \*

"4)   To secure the prompt payment of all advances and performances of all obligations hereunder and all other debts or liabilities of Debtor to you, whether now existing or hereafter arising, Debtor grants to you a security interest under the Uniform Commercial Code as adopted in this state in all Debtor's inventory and proceeds regardless whether Debtor obtained rights therein prior to or contemporaneously with or subsequent to the incurring of any debts or liabilities to you, it being the intention of the parties that such security interest shall extend to and include all present inventory in Debtor's possession, as well as any and all subsequently acquired by way of replacement, substitution, addition or otherwise, and proceeds."

A financing statement (form UCC-1) which listed as collateral all inventory of Claussen was filed with the secretary of state on November 27, 1970.

On November 24, 1970, Claussen and the Bank entered into a security agreement which also included all Claussen's inventory as collateral. A financing statement was filed with the secretary of state on December 9, 1970, covering "All General Electric Appliances." On December 14, 1970, the Bank advanced funds to Claussen to acquire the general inventory of the former owner. On December 17, 1970, the Bank filed a financing statement covering all Claussen's inventory with the Pipestone County register of deeds. The statement was not filed with the secretary of state until February 10, 1971.

Claussen was required by his agreement with Borg-Warner to "curtail" merchandise scheduled on the trust receipts—a practice where monthly payments are made to reduce the balance due on unsold items. By the fall of 1972, Claussen, through this method, had paid in full for some items of unsold appliances. On November 28, 1972, Borg-Warner and the Bank entered into an agreement whereby the Bank subordinated any interest it might have in such items to Borg-Warner's interest.

On October 19, 1973, Claussen could not meet his obligations and surrendered possession of the business to the Bank. An inventory was taken by both the Bank and Borg-Warner. At this time, Claussen owed the Bank $95,095.17 and Borg-Warner $23,682.30. The inventory disclosed appliances listed in the trust receipts of Borg-Warner showing a curtailed balance due of $12,-974.96 and revealed that Claussen was "sold out of trust" in the amount of $10,707.34. Pursuant to agreement, the Bank sold all of Claussen's assets and remitted to Borg-Warner the sum of $12,974.96, representing the curtailed balance due upon those items financed by Borg-Warner and physically in Claussen's inventory at the time of closing.

Borg-Warner's action against the Bank and Claussen followed. Prior to trial, Claussen was adjudged bankrupt and his obligations to Borg-Warner and the Bank were discharged. At the time of trial, Claussen appeared and alleged his bankruptcy as a defense. Borg-Warner stated that it had no personal claim against Claussen, and the Bank agreed that it would not pursue its cross-complaint against Claussen personally. The judgment entered did not dispose of the claims against Claussen, but did grant the Bank priority over Borg-Warner, disallowing the latter's claim against the balance of the proceeds of the sale.

The sole issue on appeal is whether a security agreement, absolute on its face, may be construed and limited on the basis of subsequent conduct.

Minnesota has adopted the Uniform Commercial Code. Minn. St. 336.1—102(2)(a) states that one of the purposes of the code

is "to simplify, clarify, and modernize the law governing commercial transactions." Article 9 establishes a system of notice filing whereby a creditor by proper filing of a financing statement can rely upon his prior secured position as contained in a written security agreement.

. In this case, Borg-Warner was clearly the prior secured creditor. The lower court sought to avoid this obvious result by construing the Borg-Warner security agreement to apply only to the appliances financed by Borg-Warner and not to Claussen's general inventory, contrary to the clear language of the agreement. In so doing, the lower court relied on the conduct of Borg-Warner in obtaining the subordination agreement from the Bank. We fail to see the materiality of that agreement as it merely restated what the factual situation was, namely, that Borg-Warner was the prior secured creditor. The court also attached importance to the fact that Claussen was in arrears from time to time, that the periodic inspections by Borg-Warner did not include a check of the general inventory,[1] and that Borg-Warner never notified the Bank of its claimed priority in the general inventory. None of these facts are material, since the U. C. C. establishes priority based on order of filing. Minn. St. 336.9—312(5)(a). To permit evidence of subsequent conduct to be introduced to vary the unambiguous terms of a security agreement is contrary both to our decisions in the general field of contract law and to the basic premise of the U. C. C. See, Wallace v. Joseph Dixon Crucible Co. 223 Minn. 162, 165, 25 N. W. 2d 465, 466 (1947); The Telex Corp. v. Data Products Corp. 271 Minn. 288, 294, 135 N. W. 2d 681, 686 (1965).

"The fundamental purpose of Art. 9 of the code is to make the process of perfecting a security interest easy, simple, and certain." James Talcott, Inc. v. Franklin Nat. Bank, 292 Minn. 277, 295, 194 N. W. 2d 775, 786 (1972). See, also, In re Goodfriend, 2 UCC Rep. Serv. 160, 161 (U. S. D. Ct. E. D. Pa. 1964):

---

[1] See, Minn. St. 336.9—205.

*"The language employed clearly created a security interest in the whole inventory.* The provision that the inventory was 'to be maintained' at a certain value can only be read to mean that future items added to the inventory were to be included in the lien. *The security agreement not only expresses the agreement made between the parties, but it is intended to notify potential creditors of the existence of the secured creditor's interest. Therefore, the language used is to be interpreted in accordance with its natural and normal meaning* and, if possible, any special interpretation that the parties may have seemed to have accorded it is to be avoided." (Italics supplied.)

If it was open for a court, in every case, to go beyond the terms of the security agreement and to determine the "bargain of the parties in fact," the code's goal of increasing certainty in financing transactions would be stymied. Compare Uniform Commercial Code Comment to U.C.C. § 9—101, 21 M. S. A. 216. For this reason, the use of subsequent conduct as evidence restricting the extent of an Article 9 security interest is improper.

Our decision to uphold the priority of filings will work a financial hardship on the Bank. However, Minn. St. 336.9—312 (3) provided the Bank with a method by which it could have perfected its security interest as a purchase money security interest. Upon such perfection, the Bank would have prevailed over Borg-Warner. However, the Bank failed to comply with the requirements of that section as it failed to notify Borg-Warner of its purchase money security interest as required by § 336.9—312(3) (b). In fact, the Bank never made a search of the secretary of state's files to determine if there was any prior secured creditor who claimed an interest in Claussen's inventory. It is also questionable whether the Bank could have met the requirements of Minn. St. 336.9—312(3) (a).[2] Our observation in James Talcott,

---

[2] That section requires that the purchase money security interest be perfected at the time the debtor receives possession of the collateral. The first loan was made on December 14, 1970, yet Claussen apparently took possession of the business in November 1970. In any case, the

Inc. v. Franklin Nat. Bank, 292 Minn. 277, 295, 194 N. W. 2d 775, 786 (1972), is applicable here:

"* * * Unquestionably, defendant bank, through misunderstanding of the applicable provisions of the code, will suffer a substantial loss. By its own failure to conform to and comply with very simple and obvious provisions of the code, it has found itself entangled in other provisions which are admittedly more complex but which are absolutely essential to the whole concept of notice filing."

Reversed and remanded with instructions to enter judgment for the plaintiff. Also, the trial court shall enter judgment of dismissal of any claims by either plaintiff or defendant Bank against Claussen.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

---

Bank's interest was not perfected until February 10, 1971, the date of filing with the secretary of state. Minn. St. 336.9—401(1)(c).