**BORG WARNER ACCEPTANCE CORPORATION, Appellant,**

v.

**ITT DIVERSIFIED CREDIT CORPORATION, Respondent.**

No. C1–83–281.

Supreme Court of Minnesota.

March 9, 1984.

David K. Hackley, Minneapolis, for appellant.

Thomas D. Nagel, Litchfield, for respondent.

YETKA, Justice.

This is an appeal by Borg Warner Acceptance Corporation, a creditor holding a perfected blanket security interest in a debtor's inventory. The district court of Meeker County declared Borg Warner's interest junior to ITT Diversified Credit Corporation's purchase money interest in seven Crestliner boats, which were part of the debtor's inventory. ITT perfected its purchase money interest after Borg Warner had perfected its blanket lien. ITT requested a UCC search of the debtor's creditors from the Secretary of State's office, but the search failed to list Borg Warner as a creditor. Because it did not know Borg Warner was a prior creditor, ITT did not notify Borg Warner of its purchase money interest. Such notice is required by Minn. Stat. § 336.9–312(3)(b) (1982) to give a subsequent purchase money lender priority over a conflicting security interest in the same collateral. When the debtor's business failed, ITT took possession of the seven Crestliner boats. Despite ITT's failure to notify Borg Warner of its purchase money interest, the district court held that ITT's interest was superior. We reverse and hold that the Borg Warner interest must prevail.

The facts have been stipulated by the parties. For convenience, we will outline the important dates:

8–21–75 Borg Warner files financing statement covering debtor's inventory.

2–13–76 Borg Warner files second financing statement covering debtor's inventory.

2–8–78 ITT files financing statement perfecting purchase money security interest in Crestliner boats.

ITT requests UCC search from Secretary of State in order to notify prior lenders of its purchase money interest.

2–10–78 ITT receives UCC search. List of creditors does not include Borg Warner. ITT gives notice as required

by section 336.9–312(3)(b) to other creditors, but does not notify Borg Warner of its purchase money interest.

9–27–78 Borg Warner perfects third security interest in inventory.

9–29–78—10–30–79 Seven Crestliner boats delivered to debtor.

3–27–79 Borg Warner files three more financing statements in inventory.

9–7–79

9–27–79

7/80 ITT recovers possession of Crestliner boats.

The issue on appeal is whether a prior perfected security interest in inventory retains priority over a conflicting and subsequently perfected purchase money interest when the purchase money lender fails to notify the prior secured party because of a mistake by the filing officer. We hold that the prior interest does retain its priority.

Minn.Stat. § 336.9–312 (1982) codifies the UCC rules governing priorities among conflicting security interests in the same collateral. Section 336.9–312(5)(a) states the general rule that the first to perfect a security interest prevails. Section 336.9–312(3) allows a perfected purchase money interest in inventory to prevail over conflicting security interests if:

    (a) the purchase money security interest is perfected at the time the debtor receives possession of the inventory; and

    (b) the purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory (i) before the date of the filing made by the purchase money secured party, or (ii) before the beginning of the 21 day period where the purchase money security interest is temporarily perfected without filing or possession (subsection (5) of section 336.9–304); and

    (c) the holder of the conflicting security interest receives the notification within five years before the debtor receives possession of the inventory; and

    (d) the notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

In this case, ITT, the purchase money lender, failed to give notice to Borg Warner, the prior secured party, because the Secretary of State's office omitted Borg Warner from the list of secured parties it provided to ITT. The court below held that, in this situation, the "equities" and the purpose of section 336.9–312 favored giving ITT priority over Borg Warner.

We believe the trial court's decision was based on erroneous reasoning. The court stated that the equities favoring ITT were the facts that it took all the steps necessary to comply with 336.9–312(3) and that it did, in fact, notify those creditors whose names were disclosed on the UCC report. However, Borg Warner also took all the steps necessary to perfect its security interest. Thus, the equities here are evenly balanced and do not support a decision for ITT any more than for Borg Warner.

The court also stated that the result furthered the purposes of section 336.9–312. The official comment to section 336.9–312 states that the purpose of the notification requirement is to protect an inventory creditor from a fraudulent debtor who seeks double-financing in the same inventory:

> The reason for the additional requirement of notification is that typically the arrangement between an inventory secured party and his debtor will require the secured party to make periodic advances against incoming inventory or periodic releases of old inventory as new inventory is received. A fraudulent debtor may apply to the secured party for advances even though he has already given a security interest in the inventory to another secured party. The notification requirement protects the inventory financer in such a situation: if he has received notification, he will presumably not make an advance; if he has not received notification (or if the other interest does not qualify as a purchase money interest), any advance he may make will have priority.

U.C.C. § 9–312 comment 3 (1972). The court below stated that this purpose would not be furthered if Borg Warner's interest was given priority because there is no evidence that the debtor was acting fraudulently and because Borg Warner's extensions of credit in 1975 and 1978 were not for the Crestliner boats.

We think Comment 3 was addressed to a creditor precisely in Borg Warner's situation. The comment indicates that the notification provisions are intended to protect a secured lender from extending credit on previously financed inventory. In this case, Borg Warner had a blanket security interest in the debtor's inventory and it continued to finance that inventory over the period the boats were delivered. The amount of credit Borg Warner extended was based on the belief that it had a priority security interest in *all* of the debtor's inventory. Borg Warner might have modified its financing arrangement if it had known that some of the inventory was covered by a superior purchase money security interest. Since it never received notice of that interest, it continued to extend financing on goods that were covered by ITT's security interest. Thus, the purposes underlying section 336.9–312(3) favor Borg Warner, not ITT.

Apart from the errors in the trial court's reasoning, we believe that placing the risk of mistakes by the filing officer on the later party to file in this situation is in accordance with the purpose of the Article 9 filing system. Article 9 establishes a system of notice filing whereby a creditor who properly files a financing statement can rely upon his prior secured position. In *Borg-Warner Acceptance Corporation v. First National Bank of Pipestone*, 307 Minn. 20, 238 N.W.2d 612 (1976), we recognized the Article 9 objective of promoting ease and certainty in the filing process. In that case, we held that evidence of subsequent conduct may not be introduced to vary the terms of a security agreement. *Id.* at 24, 238 N.W.2d at 614.

Other authority interpreting the UCC supports placing the risk of mistakes by the filing officer on the later party to file. The statute itself provides that a security interest is perfected upon tender of the filing fee or acceptance of the statement by the filing officer. Minn.Stat. § 336.9–403(1) (1982). The official comment to section 336.9–407 specifically states that the secured party therefore does not bear the risk of clerical errors:

> [U]nder Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that Section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

U.C.C. § 9–407 comment 1 (1972). This comment indicates that the drafters of the code anticipated filing errors and decided that, between two innocent parties, the last to file should bear the risk of such mistakes.

The rule stated in the comment has been followed by other courts and is discussed with approval by UCC authorities. *See, e.g., In re Royal Electrotype Corporation*, 485 F.2d 394 (3rd Cir.1973); *In re May Lee Industries, Inc.*, 380 F.Supp. 1, 2–3 (S.D.N.Y.1974); *Matter of Fowler*, 407 F.Supp. 799, 803–04 (Bkrtcy.W.D.Okla.1975); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 23–15, p. 951 (2d Ed.1980); R. Henson, *Handbook on Secured Transactions Under the Uniform Commercial Code*, § 4–5, p. 66 (2d Ed.1979); 4 R. Anderson, *Anderson on the Uniform Commercial Code*, § 9–403:5 (2d Ed.1971).

Even though the comment apparently refers to mistakes made upon the initial presentation of the financing statement and tender of the filing fee, it is equally appropriate where errors occur later—as in this case where a UCC search fails to reveal a prior creditor. *Accord, First National Bank of Sullivan County v. Mann*, 22 U.C.C.Rep.Serv. 254 (Bkrtcy.E.D.Tenn. 1977). To hold otherwise would require perfected inventory financers to review

UCC filings prior to each new extension of credit. Article 9 clearly places this burden on new creditors and allows those who first take the necessary steps for perfection to rest assured in the priority of their security interests.

For the above reasons, we hold that ITT's purchase money interest in the seven Crestliner boats does not have priority over Borg Warner's security interest in the debtor's inventory. Reversed and remanded with instructions to enter judgment in favor of Borg Warner in accordance with this opinion.