**LIEBERMAN MUSIC COMPANY, Appellant,**

v.

**Vernon HAGEN, individually and d.b.a. Wilder Than Ever, Wilder Than Ever, Inc., Fargo National Bank and Trust Company, Respondents.**

No. C8–86–860.

Court of Appeals of Minnesota.

Oct. 28, 1986.

Edward F. Klinger, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for Lieberman Music Company.

John H. Moosbrugger, Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, N.D., for Vernon Hagen.

David S. Maring, Steven L. Marquart, Cahill, Jeffries & Maring, Moorhead, for Fargo Nat. Bank and Trust Co.

Considered and decided by POPOVICH, C.J., and LANSING and CRIPPEN, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

This appeal is from partial summary judgment entered for respondent Fargo National Bank (bank) on its counterclaim against appellant Lieberman Music Co. The bank alleged and the court found that the bank's security interest had priority over Lieberman's. The trial court determined there was no just reason for delay and ordered entry of judgment. Minn.R. Civ.P. 54.02; Minn.R.Civ.App.P. 104.01. We affirm.

## FACTS

Lieberman Music Co. sold video games to respondent Vernon Hagen, who operated video amusement centers and a tavern in the Grand Forks and Fargo-Moorhead areas. Hagen began as a sole proprietor, doing business under the name Wilder Than Ever. The bank advanced him a $700,000 loan and a $500,000 line of credit to purchase the assets of two companies, Midwest Billiards and Atlas Music Company, and to provide working capital.

The bank filed a financing statement covering Hagen's equipment and other assets

to secure its loan and line of credit. The statement was filed on August 17, 1982, in Minnesota and the following day in North Dakota. The financing statement listed the debtor as Vernon Hagen individually and doing business as (d/b/a) Wilder Than Ever. The security agreement included a clause covering after-acquired property.

Shortly after the filings, Hagen entered into a partnership agreement with two other individuals, under the name of Atlas Amusement Company, to conduct a video game business and to sell pool tables and billiards supplies. The following year Hagen incorporated as Wilder Than Ever. Although the record does not detail the operation of Hagen's various businesses, Wilder Than Ever was apparently located solely in Grand Forks and operated separately from Atlas Amusement. Hagen also operated Vern's Place in East Grand Forks, under the ownership of East Grand Station, Inc. The assets of this business were also listed as security in the 1982 loan agreement between Hagen and the bank, as were real estate interests owned by Hagen.

Lieberman continued to sell video games to Hagen and his sole proprietorship, Wilder Than Ever. Lieberman filed financing statements listing security interests in these games in May 1984 and May 1985. Lieberman claimed a purchase money security interest and listed the debtor as Hagen d/b/a Wilder Than Ever. Invoices in the record show the video games were shipped a year or more before the filing of the financing statements covering them.

In March 1984 Hagen paid off the $500,-000 line of credit advanced by the bank. In May 1984 the partnership (Atlas Amusement) assigned its assets to Wilder Than Ever, Inc. The former partners signed promissory notes to the bank representing renewals of the earlier notes. The corporation also executed a promissory note consolidating previous loans. These notes were secured by financing statements covering the video games, along with other assets, and listing the corporation, Wilder Than Ever, Inc., as the debtor. The security interests were perfected by filing.

Despite this restructuring, the business encountered financial difficulties. Lieberman filed a Chapter 11 involuntary bankruptcy petition against the corporation. The bank obtained an agreement from Wilder Than Ever, signed by Hagen as president, allowing it to take possession of the equipment. The bank has taken over operation of the business.

Lieberman brought this action to recover on the promissory notes signed by Hagen as sole proprietor. The bank intervened by consent of all parties and answered, claiming a prior security interest in the equipment. The bank sought an order allowing it to dispose of the property to satisfy the debt owed it and sought also a deficiency judgment against Hagen.

Lieberman moved for summary judgment against Hagen, while the bank brought a motion for summary judgment against both Hagen and Lieberman.

Hagen stipulated to the entry of judgment against him by Lieberman. The trial court denied the bank's motion for summary judgment against Hagen. The court granted the bank's summary judgment against Lieberman, declaring the bank's 1982 security interest prior and superior and allowing the bank to dispose of the equipment to satisfy the debt. *See* Minn. Stat. § 336.9–504 (1984). Lieberman appeals the partial summary judgment.

## ISSUE

Did the trial court err in granting summary judgment declaring the bank's security interests prior and superior?

## ANALYSIS

### I

Lieberman and the bank each claim a security interest in the equipment of Wilder Than Ever, Inc. The Uniform Commercial Code establishes rules governing priority of conflicting security interests in the same collateral. The applicable provisions read:

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.

(5) [In all cases not governed by other rules in this section] priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection.

Minn.Stat. § 336.9–312(4), (5)(a) (1984).

Although Lieberman claims a purchase money security interest in the video games, invoices in the record show the games were shipped more than 20 days before Lieberman filed the financing statements covering them. Because Lieberman did not perfect the purchase money security interest at the time it received the video games or within 20 days thereafter, Lieberman is not entitled to the special priority created by Minn.Stat. § 336.9–312(4). Lieberman does not dispute this conclusion on appeal. It claims, rather, that the bank's conduct following its filings, including its knowledge of the incorporation of the business and its failure to marshal assets after default, should prevent the bank from enforcing its priority.

Absent a special priority in the conflicting claims on the same collateral, the UCC establishes priority based on the time of filing. Minn.Stat. § 336.9–312(5)(a). The secured party's conduct after filing cannot be used to restrict the extent of a security interest. *Borg-Warner Acceptance Corp. v. First National Bank of Pipestone,* 307 Minn. 20, 25, 238 N.W.2d 612, 615 (1976). Nor can it alter the order of filing:

To permit evidence of subsequent conduct to be introduced to vary the unambiguous terms of a security agreement is contrary both to our decisions in the general field of contract law and to the basic premise of the U.C.C.

*Id.,* 307 Minn. at 24, 238 N.W.2d at 614. This principle must be upheld even in cases which may work a hardship on one of the parties:

If it was open for a court, in every case, to go beyond the terms of the security agreement and to determine the "bargain of the parties in fact," the code's goal of increasing certainty in financing transactions would be stymied. * * * For this reason, the use of subsequent conduct as evidence restricting the extent of an Article 9 security interest is improper.

*Id.,* 307 Minn. at 25, 238 N.W.2d at 615 (citations omitted).

## II

The bank knew of the 1983 incorporation of Wilder Than Ever, while Lieberman claims it did not. This change in organization, however, was not sufficient to make the bank's 1982 financing statement "seriously misleading." The formal requisites of financing statements are set out in Minn.Stat. § 336.9–402(7) (1984):

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the [name] change, unless a new appropriate financing statement is filed before the expiration of that time.

Under the UCC system of notice filing, the question is whether a search under the debtor's true name would reveal the filing and whether the financing statement, once found, would reveal the correct identity of the debtor. *See In Re McCauley's Reprographics, Inc.,* 638 F.2d 117, 119 (9th Cir. 1981).

Lieberman knew of the Wilder Than Ever trade name; the bank's 1982 financ-

ing statement filed under this name did not conceal the existence of its security interests. A new filing under the corporate name, which Lieberman did not know, would have been more likely to mislead.

## III

The doctrine of marshaling assets requires a creditor with two funds from which to satisfy its interest to satisfy its debt first out of the fund to which the other creditor cannot resort. *Moser Paper Co. v. North Shore Publishing Co.,* 83 Wis.2d 852, 860, 266 N.W.2d 411, 416 (1978). It is an equitable doctrine applied to the satisfaction of a judicially determined obligation.

 The UCC permits a secured party to summarily dispose of the collateral covered by a security agreement and apply the proceeds first to payment of its own debt. Minn.Stat. § 336.9–504(1). There is no requirement that a creditor marshal assets. Nor is a creditor required to proceed first against the real property covered by its security agreement. *See* Minn.Stat. § 336.-9–501(4).

 The UCC does not require a creditor to reduce his claim to judgment. *See* Minn. Stat. § 336.9–501(1) (1984) (alternative nature of UCC remedy). The bank has pursued a judicial remedy only insofar as it seeks by its crossclaim a judgment against Hagen for the deficiency remaining after disposal of the collateral. It has not chosen a judicial remedy to enforce its interest in the collateral. The doctrine of marshaling assets may not be applied so as to defeat statutory rights, and it will not be applied if it will impose a hardship on the paramount creditor, such as would be involved in requiring the bank to take legal action to foreclose on the real estate covered by the security agreement. *Platte Valley Bank of North Bend v. Kracl,* 185 Neb. 168, 173–74, 174 N.W.2d 724, 728–29 (1970).

The trial court determined that the transfer of collateral to the bank occurred more than 90 days before the filing of the bank-

ruptcy petition and was not a preferential transfer. Thus, the collateral is not subject to a stay imposed by reason of the bankruptcy proceeding. *See* 11 U.S.C.A. § 547(b) (1979). Lieberman does not challenge this determination on appeal. Since we have concluded that the bank was not required to marshal the assets of Hagen and Wilder Than Ever upon the default, the disposal of the collateral was properly ordered.

## DECISION

The trial court did not err in granting summary judgment determining the priority of the bank's security interests and allowing it to dispose of the collateral.

Affirmed.