In the Matter of OUTRIGGER CLUB, INC., Biscayne South, Inc., 13499 Corporation, Harbor Edge Yacht & Tennis Club, Inc., Bankrupt.

Bankruptcy Nos. 77–171–BK–NCR–B, 78–988–BK–JAG–B, 78–989–BK–WMH–B and 79–864–SMA–B.

United States Bankruptcy Court, S. D. Florida.

Aug. 18, 1980.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Richard F. Levy, Theodore L. Freedman, Michael A. Weinberg, Levy & Erens, Chicago, Ill., for Lifetime Communities Inc.

Linton R. Lovett, Miami, Fla., Trustee, Roemelmeyer.

Irving Mark Wolff, P. A., Miami, Fla., for Miami Nat. Bank and Lifetime Comm. Inc.

Debra E. Cohen, Myers, Kaplan, Levinson, Kenin & Richards, Miami, Fla., Trustee.

William Roemelmeyer, Trustee in Bankruptcy, United States Bankruptcy Court, Miami, Fla.

Leo Greenfield, North Miami, Fla., for P. Greenfield, debtors.

## ORDER DENYING APPROVAL OF TRUSTEE'S STIPULATION WITH A & P BAKERIES SUPPLY

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee has requested approval of a proposed stipulation with A & P Bakeries Supply, Co., to permit the latter to remove from the top floor of the Outrigger Club, certain restaurant equipment, specifically identified in Exhibit A. (C.P. No. 1073). The matter was heard on July 23, 1980, after notice to all creditors. The major secured creditors in this case, Lifetime Industries, Inc., and Miami National Bank have objected to the stipulation.

The 1978 Code does not govern this case, which was filed before October 1, 1979. Pub.L. 95–598, Title IV, § 403(a), 92 Stat. 2549.

The facts are relatively simple. In 1977, A & P Bakeries Supply, Co., sold and delivered to the top floor of the Outrigger Club, certain restaurant equipment at a price of $275,000. No payment has ever been received. The transaction is reflected in two documents dated August 10, and September 2, 1977. Creditors Exhibits 11 and 12.

These documents which are labeled "Customer's Invoice", constitute a security agreement in favor of the seller. They reflect that the equipment was sold to Stouffers Food Mgmt. Services, Inc., and Top of the Rig, Inc. The documents are duly executed by the seller and by Biscayne South and Top of the Rig.

It is not disputed that although Stouffers was originally contemplated as the vendee and debtor in this transaction, it withdrew and was replaced by Top of the Rig and Biscayne South. The documents are not signed by Stouffers.

The documents recite that:

"Debtor acknowledges receipt of goods described, same having been accepted and approved by the signature or mark of said debtors authorized agent or employee designated below."

The security agreement was perfected by a U.C.C. filing on January 17, 1978, showing Biscayne South, Inc., Top of the Rig, Inc., and 13499 Corp., as the debtors, each of whom executed the U.C.C. statement.

Sometime thereafter A & P Bakeries sued Top of the Rig, and obtained a state court judgment in replevin. Both parties were represented by the same attorney. The judgment was entered upon a stipulation between the parties executed for both parties by the same attorney, an associate of Leo Greenfield. The ownership and control of the two corporations is in members of the Greenfield family, all of whom relied upon Leo Greenfield's judgment in this matter. Because of these circumstances, this judgment is a self–serving document, binding only on A & P Bakeries and Top of the Rig, and of no other help in resolving the matters pending before me. Because the debtors, Biscayne South, Inc., and 13499 Inc., were not parties to the replevin action, the judgment is, of course, not binding as to either of them.

An involuntary bankruptcy petition was filed in September, 1978 against Biscayne South, Inc., and 13499 Corp.

In 1974 and 1976, long before any of the events described above, Lifetime Industries

and the Bank of Miami became secured creditors with perfected liens against all property owned by Biscayne South, Inc., and 13499 Corp. as well as any after acquired property.

It is the position of the two objecting creditors that the goods were sold and delivered to Biscayne South, Inc., that the vendor's security agreement was not perfected by recordation within ten days after delivery, in accordance with the provisions of U.C.C. § 312(4) [§ 679.312(4) Florida Statutes] and, therefore, the vendor lost its opportunity to claim a purchase money security interest ahead of the prior lien of the two secured creditors.

It is the position of A & P Bakeries, Inc., the vendor, that the goods were sold to Top of the Rig, Inc., and that Biscayne South and 13499 Corp. were identified on the documents solely because of a possible landlord's lien, that the goods were delivered only to Top of the Rig, Inc., a tenant occupying premises in the Outrigger Club under a lease, which was not in default, and that since none of the debtors in this bankruptcy ever had title to or possession of this property, the trustee never obtained constructive possession of the property, and therefore, that the trustee has quite properly stipulated for the recovery of the property by the vendor. The vendor also argues that this court lacks jurisdiction to resolve this dispute.

This court has jurisdiction to resolve this matter with the implied consent of the debtor, who has filed a claim in this case and who has failed to question jurisdiction in a timely motion or answer as is required by B. R. 915. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.E.2d 391 (1966); *Matter of N. M. Kouri Corp.*, 2 Cir. 1933, 66 F.2d 241.

Additionally, this court has exclusive jurisdiction over controversies involving property in the court's custody and this property is now in the possession and custody of the trustee and, therefore, this court. *South Falls Corp. v. Rochelle*, 5 Cir. 1964, 329 F.2d 611.

■ I find that the vendor sold and delivered the goods jointly to the Top of the Rig, Inc., and Biscayne South, Inc. The vendor cannot be heard to contend otherwise in derogation of the invoice and the written security agreement under which it now claims title and right of possession. *Airlift International Inc. v. Boyd*, Fla.App.1973, 280 So.2d 57. The application of the parol evidence rule is a substantive matter, controlled by State law. *Brown v. Financial Service Corp. v. Larson*, 5 Cir. 1974, 489 F.2d 144. Although I permitted the vendor to place its conflicting evidence in the record before me, I received that evidence subject to and over the objection of Lifetime Industries and Miami National Bank and that evidence must be disregarded.[1]

Top of the Rig, Inc. is barred from asserting any claim in or any title or interest to any of this property by virtue of the consent judgment entered by the State court. Furthermore, a lease agreement between Top of the Rig, Inc. and Biscayne South, Inc. makes it clear that, as between the two of them, the sole vendee of the equipment is Biscayne.

■ I find that the plaintiff–vendor perfected its purchase money security interest on January 17, 1978 and, therefore, failed to perfect that interest within ten days after delivery, because delivery was made on August 10 and September 2, 1977. Plaintiff is estopped to contend that delivery was made later, because these dates are recited in its security agreement upon which it bases its present claim.

The only remaining question is whether the plaintiff's claim must be subordinated

1. If the conflicting parol evidence as to the identity of the vendee were admissible, I would reject the evidence that the equipment was sold only to Top of the Rig, Inc., and not to the Biscayne South, Inc. and 13499 Corp., because that evidence comes from an interested party and is, I am convinced, an afterthought.

If the conflicting evidence with respect to delivery were admissible, I would find, that although delivery was made to the leased premises of Top of the Rig, the goods were received by Top of the Rig on behalf of Biscayne South, Inc., because of the recitals in the lease between these two parties.

to the prior perfected lien of Lifetime Industries and Miami National Bank, because plaintiff's lien was not perfected in accordance with § 679.312(4), Florida Statutes, which requires recordation within ten days after delivery.

A & P Bakeries, Inc., argues that its claim as vendor is superior to the rights of the objecting creditors, because the prior liens *attach only to the vendee's equity* in the after–acquired property. This was the holding by a divided court, in *International Harvester Credit Corp. v. American National Bank of Jacksonville,* Fla.1974, 296 So.2d 32, 35:

> "We accordingly modify the district court holding as to question 2 to the extent of limiting the priority allowed by the commercial code to the first (perfected) creditor (absent timely filing) to the extent of that creditor's debtor's equity in the after–acquired property under whatever contract it was purchased, preserving to the new seller his retained interest in such after–acquired property."

In 1978, the Florida Legislature registered its disapproval with the foregoing interpretation of its legislative intent, by adopting the following preamble to an amendment of § 679.312:

> "WHEREAS, in a situation where there are conflicting security interest in the same collateral and a purchase money security interest has not been perfected within 10 days after the debtor took possession of the collateral, the Florida Supreme Court, in *International Harvester Credit Corporation v. American National Bank of Jacksonville* (296 So.2d 32), recognized 'the earlier creditor's priority of security in after–acquired property,' but limited such priority to the 'debtor's equity in the after–acquired property,' and
>
> "WHEREAS, the Uniform Commercial Code, as adopted by the Florida Legislature, and as interpreted in other jurisdictions, contains no such 'debtor's equity' concept, and in fact provides for a complete and logical system of priorities, and
>
> "WHEREAS, it is the intent of the Legislature that the concept of 'debtor's equity' should not be applicable in the State of Florida, and that the clear language in the Uniform Commercial Code should be adhered to, NOW, THEREFORE, . . ." Ch. 78–222, Laws of Florida.

The amendment, which follows this preamble, did not take effect until June 14, 1978, therefore neither the preamble nor the amendment which it introduced existed on January 17, 1978, when plaintiff's financing statement was filed. Plaintiff argues from this fact that the preamble must be disregarded in our case.

We are bound in this instance by Florida law. No court in Florida has to my knowledge yet passed upon the point decided in *International Harvester* since the Florida Legislature's repudiation of the intent ascribed to it. Ordinarily, one need not look beyond the most recent decision of the State's highest court to determine State law, but this court is not immutably bound to do so. As stated in *Hood v. Dun & Bradstreet, Inc.,* 5 Cir., 486 F.2d 25, 31:

> "Therefore, this court must determine whether there are compelling reasons why we should deviate from these early Georgia decisions. We recognize that federal courts are not immutably bound under *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) to follow state court decisions where it appears that a state court considering the identical issue would not rely on such precedent. The federal court, like the state court, can consider all information and data that the highest court of the state could consider in determining whether to strictly adhere to a prior ruling."

I am convinced that the Florida courts would now disregard *International Harvester* as precedent in light of the Legislature's unmistakeable expressions of intent. Because Chapter 78–222 did not intend to change the law but merely to prevent misapprehension as to *existing* law, its application is not merely prospective. As recognized in *State ex rel. Szabo Food Serv. Inc. of N. C. v. Dickinson,* Fla.1974, 286 So.2d 529, 531:

"The mere change of language does not necessarily indicate an intent to change the law for the intent may be to clarify what was doubtful and to safeguard against misapprehension as to existing law. *Helvering v. New York Trust Co.*, 292 U.S. 455, 468, 54 S.Ct. 806, 810, 78 L.Ed. 1361 (1934). The language of the amendment in 1971 was intended to make the statute correspond to what had previously been supposed or assumed to be the law. The circumstances here are such that the Legislature merely intended to clarify its original intention rather than change the law."

It follows that the vendor's lien is inferior to those of Lifetime Communities and Miami National Bank and is inferior to the trustee's claim under § 70 of the Act [11 U.S.C. § 110]. The proposed stipulation is disapproved. The restaurant equipment in question is an asset of this estate and subject to the liens of the objecting creditors.

Each party shall bear its own costs incurred in this matter.