**LAKE MILLE LACS INVESTMENT, INC., Appellant,**

v.

**Wayne PAYNE, et al., Francis Branch, et al., Respondents.**

No. C7-86-1319.

Court of Appeals of Minnesota.

Feb. 24, 1987.

Review Denied April 29, 1987.

Gary L. Voegele, Faribault, for appellant.

John M. James, Minneapolis, for respondents Wayne Payne, et al.

Michael J. Froelich, Minneapolis, for respondents Francis Branch, et al.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment entered against appellant Lake Mille Lacs Investment, Inc. and an order denying its post-trial motions. Appellant's action for damages for trespass and for injunctive relief was consolidated with a declaratory judgment action brought against it by respondents Francis and Patricia Branch. We reverse and remand.

## FACTS

Port Mille Lacs is a subdivision located on the shore of Lake Mille Lacs, developed in the 1960's by Bohmer-Herberger Development. Most of the lots in the development are not lakeshore property. Respondents are owners of lots bordering on South Harbor, an artificial harbor with permanent docks that was dredged sometime before 1965. Respondents Payne removed the section of the permanent docks immediately in front of their property, while respondents Brooks and Fields built a private dock over and beyond the permanent docks. They claimed the docks blocked their access to the harbor and to Lake Mille Lacs. Appellant Lake Mille Lacs Investment, Inc. (LMLI), an organization of lot owners which rented out the docks, brought an action for trespass and sought injunctive relief.

The docks in South Harbor were built before 1967. They were originally confined to the center of the harbor. In the mid–1970's, however, docks were placed around the edge of the harbor, attached by cables to the shore. Respondents all purchased their lots following installation of the docks. Paynes bought their lot in 1979, the others soon after, with the Branches buying in 1983.

The land beneath South Harbor was sold by Bohmer-Herberger to International Resources on a contract for deed. It was later conveyed by quit claim deed to appellant LMLI. The trial court, however, excluded an offered quit claim deed from Bohmer-Herberger to International Resources. This exclusion left a gap in the title, and the county recorder testified that Bohmer-Herberger remained the owner of record.

The Port Mille Lacs subdivision is Torrens property. Respondents' properties were all originally part of Outlot C in the Port Mille Lacs subdivision. They were later subdivided and registered as Port Mille Lacs South Harbor in 1965. The decree of registration lists certain "protective covenants and restrictions," but these do not include a riparian easement. Such an easement does appear on a document which purports to apply to Outlot C of Port Mille Lacs South Harbor. This document, however, is not noted on the decree of registration.

Respondents' certificates of title were not introduced at trial. The county recorder testified and submitted a list of those lots on which the riparian easement appeared, either in the deed or the certificate of title. Respondents' properties were not on this list. Respondents all testified they were told there were no restrictions on their certificates of title.

Respondents began removing and building over the permanent docks in 1981. LMLI served its complaint alleging trespass in August 1982. It sought discovery in September 1982, including respondents' deeds and certificates of title. In April 1985, respondents Branch brought a declaratory judgment action against LMLI seeking a declaration of riparian rights and a temporary injunction. In May 1985, this action was consolidated with the trespass action.

## ISSUE

Did the trial court err in determining respondents had riparian rights?

## ANALYSIS

■ The scope of review in a case tried by the court without a jury is limited to determining whether the court's findings are clearly erroneous and whether it erred in its conclusions of law. *Leininger v. Anderson*, 255 N.W.2d 22, 26–27 (Minn. 1977).

■ The trial court concluded that the waters of South Harbor were "public waters" as defined by Minn.Stat. § 105.37, subd. 14 (1984) and, therefore, respondents enjoyed riparian rights.

The supreme court in *Johnson v. Seifert*, 257 Minn. 159, 169, 100 N.W.2d 689, 696–97 (1960), held that an owner of land abutting on a lake "suitable for fishing, boating" and other common uses, has riparian rights

> regardless of the navigable *or public character* of the lake and regardless of the ownership of the bed thereof.

*Id.* (footnote omitted) (emphasis added). The trial court, therefore, erred in focusing on the public character of South Harbor. *See also Pratt v. State, Department of Natural Resources*, 309 N.W.2d 767, 772 (Minn.1981) (a declaration that waters are "public waters" is subject to *existing* riparian rights).

■ South Harbor is an artificial body of water; prior to dredging it was swampland. The common law rule has been stated as follows:

> Riparian rights basically adhere to natural, not artificial watercourses.

1A G. Thompson, *Commentaries on the Modern Law of Real Property* § 275, at 462 (1980); *see also* Restatement (Second) of Torts §§ 841–843 (1979) (riparian rights defined with reference to natural bodies of water). The issue was presented to the trial court in the briefs and written final arguments, as well as the post-trial motions.

The supreme court has held that abutting landowners may acquire riparian rights in artificial watercourses formed by the diversion of a natural channel. *Kray v. Muggli*, 84 Minn. 90, 86 N.W. 882 (1901).

Respondents contend South Harbor acquired the character of a natural body of water, in which they have riparian rights.

In *Kray*, a milldam was built across a river, creating several lakes and ponds along its course. The mill company and its successors maintained the dam for more than 40 years, the time then required to acquire a right by prescription. When the upstream riparian owners sought to enjoin the dam's removal, the supreme court held

that where the flow of a stream of water has been diverted from its natural channel, or obstructed by a permanent dam, *and such diversion or obstruction has continued for the time necessary to establish a prescriptive right to perpetually maintain the same,* the riparian owners along such stream of water, who have improved their property with reference to the change and in reliance on the continuance thereof, acquire a reciprocal right to have the artificial conditions remain undisturbed.

*Id.* at 96, 86 N.W. at 884 (emphasis added). The *Kray* court cited cases from other jurisdictions, also finding riparian rights in artificial conditions of water on a theory of prescription. *See, e.g., Smith v. Youmans,* 96 Wis. 103, 70 N.W. 1115 (1897).

This theory of riparian rights cannot be applied to the facts of this matter. Although South Harbor had existed for 15 years when respondents began tearing out the docks, the developer, Bohmer-Herberger, owned the land beneath South Harbor and needed no prescriptive right to create the artificial condition. Therefore, respondents did not acquire any reciprocal right under *Kray*. Moreover, respondents made no improvements and took no actions in reliance on their claimed riparian rights in South Harbor, which they did not assert until 1981. As one federal court has noted, in the "vast majority" of cases finding riparian rights in artificial waterways, the party claiming such rights has shown reliance. *United States v. 1,629.6 Acres of Land,* 503 F.2d 764, 768 (3rd Cir.1974).

*Kray* and other cases have relied on theories of prescription and reciprocal ease-

ments to extend riparian rights to artificial bodies of water, rather than directly addressing the common law exception for artificial waterways. *See Greisinger v. Klinhardt,* 321 Mo. 186, 9 S.W.2d 978 (1928) (applying doctrine of reciprocal easements). This approach is criticized in Evans, *Riparian Rights in Artificial Lakes and Streams,* 16 Mo.L.Rev. 93 (1951), where the author advocates the recognition of riparian rights in artificial waterways which have the "appearance of permanency." *Id.* at 113. In this matter, however, the docks, which circled the harbor, are also permanent. Respondents admitted they were aware of this use, blocking any riparian access, when they bought their properties.

Respondents point out that South Harbor is connected to Lake Mille Lacs, a natural body of water. South Harbor, however, remains an artificial diversion of waters, just as the dam and reservoir in *Kray,* regardless of the means of diversion or the extent of the diversion in relation to the natural body of water.

We note with concern the lack of documentary evidence presented on several issues in this case. The certificates of title to respondents' properties were not introduced. These were the best evidence of whether covenants reserving riparian easements encumbered respondents' properties. Evidence was also lacking concerning the chain of title to the land underlying South Harbor, and the dredging of the harbor. However, we need not address these issues in light of our disposition of this case.

■ The trial court, having found that respondents enjoyed riparian rights, did not reach the issue of damages or other relief for trespass. The court did find that LMLI had established no actual damages. Without a showing of actual damages, LMLI cannot recover punitive damages. *Meixner v. Buecksler,* 216 Minn. 586, 591, 13 N.W.2d 754, 757 (1944).

■ Respondents Payne, who admitted tearing out a section of the docks, could have been assessed damages, on adequate

proof, but cannot be permanently enjoined. *See Theros v. Phillips*, 256 N.W.2d 852, 859 (Minn.1977) (a continuing or repeatedly threatened trespass may be enjoined). There was no evidence the dock section in front of their property has been rebuilt. Having established a trespass, however, LMLI is entitled to nominal damages. *See Prahl v. Brosamle*, 98 Wis.2d 130, 153, 295 N.W.2d 768, 781 (1980) (landowner not showing actual damages from trespass is entitled to nominal damages).

Respondents Brooks and Fields built over LMLI's rental dock. This continuing trespass may be enjoined or compensated by damages. The trial court must determine the appropriate relief. *See Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 92 (Minn. 1979) (injunctive relief is available if damages are inadequate and injunction is necessary to prevent irreparable injury). Respondents Branch took no action against LMLI's property.

## DECISION

The trial court erred in concluding respondents enjoyed riparian rights. The trespass action is remanded for determination of damages and other appropriate relief against the various respondents.

Reversed and remanded.