**AMERICAN STATE BANK OF OLIVIA, Appellant,**

v.

**LADWIG & LADWIG, INC., Respondent.**

No. C4–01–2185.

Court of Appeals of Minnesota.

June 25, 2002.

Michael S. Dove, Alex W. Russell, Gislason & Hunter, L.L.P., New Ulm, for appellant.

Ronald R. Frauenshuh, Sr., Frauenshuh & Spooner, P.A., Paynesville, for respondent.

Considered and decided by
KLAPHAKE, Presiding Judge,
HALBROOKS, Judge, and HANSON, Judge.

## OPINION

HANSON, Judge.

Respondent farmer agreed to sell a 50% ownership interest in a combine to debtor if debtor made five annual loan payments on the combine. Appellant bank sued respondent farmer to recover possession of the combine in which the bank asserted a 50% ownership interest by foreclosure of its security agreement with debtor. The district court granted summary judgment dismissing the action, concluding that debtor had failed to make the required payments, that debtor thus had no rights in the combine, and that appellant bank's security interest did not attach. We conclude that the question of whether debtor acquired a sufficient ownership interest in the combine for appellant bank's security interest to attach depends on whether the combine was "delivered" to debtor. Because there are genuine issues of material fact with respect to whether the combine was "delivered" to debtor, we reverse summary judgment and remand.

## FACTS

Respondent Ladwig & Ladwig, Inc. (Ladwig) owned a John Deere 9600 combine it had purchased with financing from John Deere Credit, using the combine as collateral. In December 1991, Ladwig entered an agreement with Mark and Donna Herickhoff (Herickhoffs) which provided as follows:

This is to certify that Mark and Donna Herickhoff will have a 50% interest in the John Deere 9600 Combine, serial number M09800X637897 purchased 11–2–91, with an unpaid balance price of $62,138.78 and a total amount financed of $76,206.60, excluding heads, and including duals, providing payments are made on or before the following dates:

Principal and interest are paid to Ladwig & Ladwig Inc. in 5 consecutive installments as per attached contract, beginning Jan. 1, 1993, and on the same day thereafter annually, with the last payment due Jan. 1, 1997.

The Herickhoffs did not make the payments due in 1993, 1994, or 1995. Before January 1, 1996, Ladwig traded the combine for another John Deere 9600. Ladwig told the Herickhoffs that they could obtain an ownership interest in the new combine by making the same five payments, but also said that they would get no ownership interest unless and until they made the payments. At the time that Ladwig traded the first combine, the agreement with the Herickhoffs was amended to reflect the trade, stating "[a]s of 1–1–96, the above combine has been traded in and agreed upon JD 9600, serial # X650923 & payments will apply on payment schedule." The Herickhoffs made their first payment of $7,148.03 in 1996 and their second payment of $7,148.03 in early 1998, for a total of $14,296.06 of the $35,740.15 they agreed to pay.

In May 1993, the Herickhoffs granted a security interest in all of their personal property, including an alleged one-half share in the combine, to appellant Ameri-

can State Bank of Olivia (American). American filed a UCC–1 Financing Statement with the county. In January 1994, the Herickhoffs submitted a balance sheet to American that listed a one-half share in the combine as an asset. After the second payment was made in January of 1998, the Herickhoffs told American that their final payment would be due in March 1998.

In February 2000, Ladwig was in danger of having the combine repossessed by John Deere Credit because of the Herickhoffs' failure to make the required payments. Ladwig refinanced through North American Bank of Elrosa, which paid off Ladwig's remaining balance with John Deere Credit and believed itself to be the only creditor with a security interest in the combine, based on the information Ladwig provided.

Between 1993 and 1999, Ladwig permitted the Herickhoffs to use the combine temporarily each year to complete the harvest of their crops. The combine was otherwise stored and maintained by Ladwig, who also used it for harvesting and to provide custom combining for other farmers. In 2000, after the combine had been refinanced, Ladwig told the Herickhoffs that the two payments they had made would be treated as compensation for their use of the combine, that they were in breach of the agreement and that they would no longer be permitted to use the combine. In the fall of 2000, Herickhoffs took the combine without Ladwig's consent, to complete their harvest. Ladwig reported the taking as a theft and the county sheriff recovered the combine and returned it to Ladwig.

The Herickhoffs defaulted on their loan with American. American demanded that Ladwig deliver the combine for liquidation, and Ladwig refused. American brought suit to recover the combine from Ladwig. Ladwig filed a motion for summary judg-

ment, and American filed a cross motion for summary judgment. The district court granted summary judgment for Ladwig, holding that under Article 2 (the sales article) of the Uniform Commercial Code (UCC), Minn.Stat. § 336.2–401(3) (2000), the parties could determine by explicit agreement when any ownership interest would pass and that the agreement unambiguously provided that the 50% interest would not pass to the Herickhoffs until the required payments were made in full. The court held that the Herickhoffs had no interest in the combine to which American's security interest could attach. This appeal followed.

## ISSUES

1. Did the district court err by construing the agreement to explicitly provide that no ownership interest would pass to the Herickhoffs until they paid in full?

2. Did Ladwig's consent to the temporary use of the combine by the Herickhoffs constitute sufficient "delivery" to establish an ownership interest in the Herickhoffs to which American's security interest would attach?

## ANALYSIS

On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996). We view the evidence in a light most favorable to the nonmovant. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

### I

American argues that the question of when title passed to the Herickhoffs under article 2 of the UCC is irrelevant because any title retained by Ladwig must be con-

sidered a purchase-money security interest and, under article 9 of the UCC, that purchase-money security interest is subordinate to American's security interest because it was not perfected by the filing of a UCC–1 financing statement. American relies on *Greenbush State Bank v. Stephens,* 463 N.W.2d 303 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991).

In *Greenbush,* the bank had a perfected security interest in the property of its debtor, Stauffenecker. *Id.* at 307. It claimed that its interest attached to a tractor that had been purchased by Stauffenecker but was in the possession of his neighbor, Stephens. *Id.* at 305. Stephens claimed to be the owner because he had provided part of the purchase price to Stauffenecker under an agreement that Stephens would own the tractor until Stauffenecker paid him back and that, until Stauffenecker paid, Stephens and Stauffenecker would share the use of the tractor in their respective farming operations. *Id.*

Our analysis began with the question of whether Stauffenecker had any ownership interest to which the bank's security interest could attach. *Id.* at 306. The framework for that analysis is provided by Minn. Stat. § 336.9–203(1)(c) (1988), which provides in part that a security interest is enforceable against the debtor and third parties with respect to the collateral only if the debtor has "rights in the collateral."

We concluded that Stauffenecker clearly had an ownership interest in the collateral, that the bank's security interest attached to it, and that the issue thus became one of priority between the security interest of the bank and the interests of Stephens. *Greenbush,* 463 N.W.2d at 306–7. We characterized Stephens' interest as a "purchase money security interest" under Minn.Stat. § 336.9–107 (1988), which states:

A security interest is a "purchase money security interest" to the extend that it is

\* \* \* \*

(b) taken by a person who by making advances \* \* \* gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used. *Greenbush,* 463 N.W.2d at 306. Given these two competing security interests, priority was determined "according to the priority in time of filing or perfection." *Id.* at 307. (quoting Minn.Stat. § 336.9–312(5) (1988)). Because Stephens did not file a UCC–1 Financing Statement, his purchase money security interest was not perfected and the bank's security interest took priority. *Id.* at 307.

American argues, by analogy to *Greenbush,* that Ladwig's agreement to sell a 50% interest to the Herickhoffs had the legal effect of creating a purchase money security interest to 50% of the combine in Ladwig and that Ladwig's failure to perfect that interest means that American's perfected security interest takes priority. But *Greenbush* is not so completely analogous.

First, the parties were aligned quite differently in *Greenbush* because the purchase-money security interest was essentially held by Stephens as the "buyer" (Stauffenecker owned the tractor and transferred title to Stephens in consideration for his partial payment). *Id.* at 305. Here, it is argued that the purchase money security interest was held by Ladwig as the "seller." Accordingly, while *Greenbush* may provide some guidance on the nature of Ladwig's (the sellers) interest in the combine, it provides no guidance on the more crucial issue of whether the Herickhoffs (the buyers) acquired any ownership interest.

In fact, in *Greenbush* the premise for the priority analysis, that the buyer Stauffenecker had an ownership interest to

which the bank's security interest could attach, was not disputed. *Id.* at 306. If we were to realign the parties to be analogous to *Greenbush,* we would as easily conclude that Ladwig had a clear ownership interest in the combine, but Ladwig is not American's debtor. Under the present facts, the premise for any priority analysis is disputed. In fact, it is the central dispute between the parties. It requires a determination of whether the Herickhoffs, as buyers, have an ownership interest in the combine sufficient for American's security interest to attach. Until that premise is established, the characterization of Ladwig's interest as being a purchase-money security interest is irrelevant because there would be no other competing security interest.

Further, the agreement between Ladwig and the Herickhoffs contemplated the sale of only a partial interest to the Herickhoffs whereas, in *Greenbush,* the entire interest was transferred to Stephens and the entire interest was to revert to Stauffenecker if he paid Stephens in full. *See id.* at 305. In the present circumstance, the retention of title by Ladwig is obviously more than simply the retention of a security interest because Ladwig was to remain a partial owner even after any transfer of partial ownership to the Herickhoffs.

Given this analysis, we conclude that the district court was correct in focusing not on whether Ladwig's interest included a purchase money security interest, but on whether the Herickhoffs had acquired a sufficient ownership interest for American's security interest to attach. That focus appropriately takes us to the provisions of article 2 of the UCC that address the transfer of ownership. Minn.Stat. § 336.2–401 (2000) states in part as follows:

> Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this article and matters concerning title become material the following rules apply:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (section 336.2–501), and *unless otherwise explicitly agreed* the buyer acquires by their identification a specified property as limited by this chapter. Any retention or reservation by the seller of the title (property) in goods *shipped or delivered* to the buyer is limited in effect to a reservation of a security interest. * * *

> (2) *Unless otherwise explicitly agreed* title passes to the buyer at the time * * * at which the seller completes performance with reference to the *physical delivery* of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *.
> * * * *

> (3) *Unless otherwise explicitly agreed* where *delivery* is to be made without moving the goods,

> (b) * * * title passes at the time and place of contracting.

(Emphasis added). *See also* Minn.Stat. §§ 336.2–105 (2000) (defining goods as "all things * * * which are movable at the time of identification to the contract for sale" and allowing the sale of a part interest).

As can be seen, the transfer of ownership may turn, in some instances, on what the parties "otherwise explicitly agreed." Minn.Stat. § 336.2 401. Under paragraph (1), the buyer acquires "a specified property" in goods on their identification, "unless otherwise agreed." *Id.* at (1). Under

paragraph (2), title passes to buyer at the time of delivery, "unless otherwise explicitly agreed." *Id.* at (2). Under paragraph (3), title passes at the time of contracting where delivery is to be made without moving the goods, "unless otherwise explicitly agreed." *Id.* at (3). The district court construed the agreement to mean that the parties had otherwise explicitly agreed that the Herickhoffs would not have any ownership interest in the combine until they made all payments. We agree that this is the plain and ordinary meaning that must be given to the language of the agreement. But this does not end the inquiry.

## II

■ The one instance in section 336.2–401 where the passage of title is not controlled by what the parties have otherwise explicitly agreed is described in paragraph (1), where an agreement that the seller will retain title is only given the effect of a reservation of a security interest, if the property has been "delivered." *Id.* at (1). Stated another way, we read paragraph (1) to mean that the delivery of the goods establishes an ownership interest in the buyer even though the parties have otherwise explicitly agreed. *See id.*

■ The issue of when "delivery" occurs when only a partial interest in the goods is being sold is a novel issue that was not addressed by the parties and has not been discussed in any case that we have found. In general, for delivery to occur the seller must "put and hold conforming goods at the buyer's disposition" pursuant to the agreement. Minn.Stat. § 336.2–503(1) (2000). Delivery requires that the seller

intend to relinquish control over the goods to the buyer by placing them at the buyer's disposal. *See Joseph Heiting & Sons v. Jacks Bean Co.,* 236 Neb. 765, 463 N.W.2d 817, 823 (1990) (stating that "[d]elivery occurs when the seller does everything necessary to put goods completely and unconditionally at the buyer's disposal") (citation omitted). American acknowledges that "delivery" requires a transfer of possession, citing *Goosic Constr. Co. v. City Nat'l Bank of Crete,* 196 Neb. 86, 241 N.W.2d 521, 522 (1976) (stating "[d]elivery may also be defined as an act by which a seller parts with possession, and a buyer acquires possession.").

This general definition of delivery must be modified in the case of the sale of a partial interest, where possession is to be shared even after the transfer of partial ownership. In such a case, the relinquishment of possession by the seller would never be "complete" or "unconditional" because the buyer will only receive a partial interest and the buyer's right to share in the possession of the property will always be subject to the condition of the seller's right to share in possession.[1]

■ Extrapolating from these general principles to the circumstances where there is a sale of only a partial interest in equipment, we conclude that proof of "delivery," where the buyer is given only temporary possession, requires a showing that such possession is acquired pursuant to an enforceable right of the buyer under the agreement, and is not optional or gratuitous with the seller. More specifically, to prove delivery under paragraph (1) of § 336.2–401, American must show that the Herickhoffs hold an enforceable right un-

---

1. In *Greenbush,* we addressed a somewhat analogous issue relating to article 9's provisions for perfection of a security interest by "possession" within 20 days after the sale. *Greenbush* 463 N.W.2d at 308. We concluded

that the sharing of the tractor, under which the tractor was on the buyer's farm "most of the time," was not sufficient to meet the "possession" requirements. *Id.*

der the agreement to the annual use of the combine for their harvest.

The district court did not address paragraph (1), but focused solely on paragraph (3) of section 336.2–401, where "delivery" is to occur without moving the goods. See Minn.Stat. § 336.2–401(3). In this context, the district court stated that "the combine was 'delivered' to Herickhoffs without it being moved * * *." We do not understand this statement to be a legal conclusion on the issue of delivery as it might be relevant to paragraph (1). In fact, the evidence before the court on the issue of delivery is not conclusive.

The agreement does not address the rights of the Herickhoffs to the use of the combine. Further, the affidavits provided in support of the cross-motions for summary judgment provide scant details on the facts relevant to the question of delivery. Both Ladwig and the Herickhoffs state that Ladwig only loaned the combine to the Herickhoffs for the 1993 through 1999 harvests. The evidence also shows that the Herickhoffs could only use the combine with Ladwig's express consent. In fact, when the Herickhoffs attempted to use the combine in the fall of 2000 without Ladwig's consent, Ladwig enlisted the sheriff to recover it. Although the parties do not dispute the fact that Ladwig controlled the combine and that the Herickhoffs were only allowed to use it with Ladwig's consent, we conclude that there are genuine issues of material fact with respect to whether Ladwig's consent to the temporary use of the combine by the Herickhoffs was in recognition of an enforceable right of the Herickhoffs to share possession, so as to constitute "delivery" under the agreement. As a result, the district court erred by granting summary judgment for Ladwig.

## DECISION

We agree with the district court's conclusion that the parties explicitly agreed that the Herickhoffs would not have an ownership interest in the combine until they paid in full. But we conclude that such agreement does not control if the combine was delivered. Because there are genuine issues of material fact concerning whether delivery occurred, we reverse the summary judgment for Ladwig and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**